WILLIAM A. ISAACSON (*Pro hac vice forthcoming*)
wisaacson@dirllp.com
Telephone: +1.202.240.2902
JESSICA PHILLIPS (*Pro hac vice forthcoming*)
jphillips@dirllp.com
Telephone: +1.202.240.2907
AGBEKO PETTY (*Pro hac vice forthcoming*)
apetty@dirllp.com
Telephone: +1.202.240.2906
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004

DONALD J. CAMPBELL (No. 1216)
djc@cwlawlv.com
Telephone: +1.702.382.5222
J. COLBY WILLIAMS (No. 5549)
jcw@cwlawlv.com
Telephone: +1.702.382.5222
CAMPBELL & WILLIAMS
710 South 7th Street
Las Vegas, NV 89101

CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
Telephone: +1.415.395.8157
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
Telephone: +1.415.646.7839
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

[Additional counsel listed on signature page]

*Attorneys for Defendants Zuffa, LLC, TKO Group Holdings, Inc., and Endeavor Group Holdings, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Phil Davis, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Zuffa LLC, TKO Group Holdings, Inc. (d/b/a Ultimate Fighting Championship and UFC), and Endeavor Group Holdings, Inc.,<br><br>Defendants. | Case No.: 2:25-cv-00946-RFB-BNW<br><br>**DEFENDANTS' MOTION TO DISMISS**<br><br>**HEARING REQUESTED** |

# **<u>TABLE OF CONTENTS</u>**

MOTION TO DISMISS ............................................................................................................1

INTRODUCTION ...................................................................................................................1

I.      RELEVANT BACKGROUND ...................................................................................2

      A.      The *Le* Litigation.............................................................................................2

      B.      The *Johnson* Litigation ...................................................................................3

      C.      The *Le* Settlement Agreement ........................................................................3

      D.      The *Cirkunovs* Litigation ................................................................................4

      E.      The *Davis* Complaint ......................................................................................5

II.     LEGAL STANDARD................................................................................................6

ARGUMENT .........................................................................................................................7

I.      Plaintiff's Claims Are Barred By The *Le* Settlement Release. .............................7

      A.      Plaintiff Is Bound by the *Le* Settlement Agreement. .....................................7

      B.      The *Le* Settlement Contains a Broad Release of Claims. ...............................8

      C.      Plaintiff's Claims Fall Within the Scope of the *Le* Settlement Release. .................9

II.     Plaintiff Has Also Failed to Plead Article III Standing. ......................................10

III.    Plaintiff Lacks Antitrust Standing to Pursue His Claims....................................12

      A.      Plaintiff's Claim Asserts the Rejected Umbrella Theory of Standing.................13

      B.      Plaintiff's Theory of Standing Fails Even with Umbrella Standing. ....................15

IV.    CONCLUSION.......................................................................................................17

i

Defs.' Mot. to Dismiss
Case No. 2:25-cv-00946-RFB-BNW

## Table of Authorities

**Page(s)**

### CASES

*Adams v. Wells Fargo Bank, N.A.*,
  No. 4:13-cv-05164, 2015 WL 1434599 (N.D. Cal. Mar. 30, 2015) ........................................9

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
  836 F.3d 1171 (9th Cir. 2016) ..........................................................................................12

*Allen v. Dairy Farmers of Am., Inc.*,
  No. 5:09-cv-00230, 2014 WL 2610613 (D. Vt. June 11, 2014) .........................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .........................................................................................................7

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
  472 U.S. 585 (1985) .......................................................................................................12

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983) .............................................................................................12, 13, 16

*Bakay v. Apple Inc.*,
  No. 5:24-cv-00476, 2024 WL 3381034, slip op. (N.D. Cal. July 11, 2024),
  *appeal docketed*, No. 24-5314 (9th Cir. Aug. 30, 2024) ...............................................16

*Bayer v. Neiman Marcus Grp., Inc.*,
  861 F.3d 853 (9th Cir. 2017) ...........................................................................................10

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*,
  710 F.3d 946 (9th Cir. 2013) .............................................................................................6

*Cirkunovs v. Zuffa LLC*
  No. 2:25-cv-00914 (D. Nev. Mar. 23, 2025) ...................................................................1, 5

*City of Oakland v. Oakland Raiders*,
  20 F.4th 441 (9th Cir. 2021), *cert. denied*, 143 S. Ct. 84 (2022)...........................13, 16

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013).....................................................................................................10, 11

*Costco Wholesale Corp. v. AU Optronics Corp.*,
  No. 2:13-cv-01207, 2014 WL 4723880 (W.D. Wash. Sept. 23, 2014) .............................15

*Dukes v. Walmart Stores, Inc.*,
  564 U.S. 338 (2011)........................................................................................................10

*FTC v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) .......................................................................................11, 12

ii

Defs.' Mot. to Dismiss
Case No. 2:25-cv-00946-RFB-BNW

*Garabet v. Autonomous Techs. Corp.*,
   116 F. Supp. 2d 1159 (C.D. Cal. 2000) .................................................................14

*Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*,
   711 F.3d 68 (2d Cir. 2013).........................................................................................12

*Gross v. New Balance Athletic Shoe, Inc.*,
   955 F. Supp. 242 (S.D.N.Y. 1997) ...........................................................................15

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
   19 F.4th 127 (2d Cir. 2021) .......................................................................................15

*In re Amazon.com, Inc. eBook Antitrust Litig.*,
   No. 1:21-cv-00351, 2022 WL 4581903 (S.D.N.Y. Aug. 3, 2022), *report and
   recommendation adopted*, 2022 WL 4586209 (S.D.N.Y. Sept. 29, 2022)...............15

*In re Coordinated Pretrial Procs. in Petroleum Prods. Antitrust Litig.*,
   691 F.2d 1335 (9th Cir. 1982) .............................................................................13, 14

*In re HIV Antitrust Litig.*,
   No. 3:19-cv-02573, 2022 WL 22609107 (N.D. Cal. Sept. 27, 2022).......................14

*In re Online DVD Rental Antitrust Litig.*,
   No. 4:09-md-02029, 2011 WL 1629663 (N.D. Cal. Apr. 29, 2011) .........................14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. 3:07-md-01827, 2012 WL 6708866 (N.D. Cal. Dec. 26, 2012), *aff'd*, 637
   F. App'x 981 (9th Cir. 2016) ....................................................................................14

*Johnson v. Zuffa, LLC*,
   No. 2:21-cv-01189 (D. Nev June 23, 2021)...........................................................1, 3

*Jones v. Micron Tech. Inc.*,
   400 F. Supp. 3d 897 (N.D. Cal. 2019) ......................................................................15

*Key v. Qualcomm Inc.*,
   129 F.4th 1129 (9th Cir. 2025) ..................................................................................12

*Lahren v. Univ. & Cmty. Coll. Sys. of Nev.*,
   No. 3:03-cv-00631, 2005 WL 8161793 (D. Nev. Dec. 27, 2005) ..............................7

*Le v. Zuffa, LLC*,
   No. 2:15-cv-01045 (D. Nev.).......................................................................................1

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)...................................................................................................10

*M.S. v. Brown*,
   902 F.3d 1076 (9th Cir. 2018) ...................................................................................11

*Marder v. Lopez*,
    450 F.3d 445 (9th Cir. 2006) ................................................................................................7

*McGee v. S-L Snacks Nat'l*,
    982 F.3d 700 (9th Cir. 2020) .............................................................................................10

*Mirage Wine + Spirit's, Inc. v. Apple Inc.*,
    No. 3:23-cv-03942, 2025 WL 1896006, slip op. (S.D. Ill. July 9, 2025) .............................16

*NicSand, Inc. v. 3M Co.*,
    507 F.3d 442 (6th Cir. 2007) (en banc) ..............................................................................12

*Oliver v. Am. Express Co.*,
    No. 1:19-cv-00566, 2020 WL 2079510 (E.D.N.Y. Apr. 30, 2020)........................................15

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
    555 U.S. 438 (2009) ...........................................................................................................12

*Paulsen v. CNF Inc.*,
    559 F.3d 1061 (9th Cir. 2009) ...........................................................................................11

*Sabol v. PayPal Holdings, Inc.*,
    No. 4:23-cv-05100, 2024 WL 3924686, slip op. (N.D. Cal. Aug. 23, 2024) ........................14

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)...........................................................................................................10

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)...........................................................................................................10

*United States v. Colgate & Co.*,
    250 U.S. 300 (1919)...........................................................................................................12

*Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004).......................................................................................................11, 12

**STATUTES**

15 U.S.C. §§ 6301 *et seq.*...........................................................................................................6

15 U.S.C. § 6301(8) ...................................................................................................................6

Sherman Act.......................................................................................................................12, 16

Sherman Act § 2 ..........................................................................................................1, 2, 3, 5

iv

Defs.' Mot. to Dismiss
Case No. 2:25-cv-00946-RFB-BNW

**RULES**

Federal Rule of Civil Procedure
    12(b)(1) ...............................................................................................1
    12(b)(6) ............................................................................................1, 6

Rule 23(e)..................................................................................................4

v

Defs.' Mot. to Dismiss
Case No. 2:25-cv-00946-RFB-BNW

1

## **MOTION TO DISMISS**

Defendants Zuffa, LLC (d/b/a Ultimate Fighting Championship and UFC) ("Zuffa"), TKO Group Holdings, Inc., ("TKO"), and Endeavor Group Holdings, Inc. ("Endeavor") hereby move for an Order dismissing the Class Action Complaint (ECF No. 1) ("Complaint"), with prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).  Defendants base this motion on the accompanying Memorandum of Points and Authorities; and any oral argument that may be permitted.

## **INTRODUCTION**

With this action, Plaintiff Phil Davis, a former Ultimate Fighting Championship ("UFC") fighter and member of the *Le* class, seeks to litigate claims that were settled and released in *Le*, and asserts identical factual allegations and claims brought against UFC in the *Johnson* and *Cirkunovs* cases.[1]  The only difference here is that Davis seeks to represent a putative class *not* of UFC fighters, but of fighters "who competed in one or more live Professional MMA bouts for a non-UFC Promoter" since May 29, 2021.  *Davis*, Compl. ¶ 46, ECF No. 1.

Davis's Complaint suffers from two fatal flaws—neither of which were presented by the previous cases—that require dismissal with prejudice:  *First*, Davis was a member of the *Le* class; yet he now seeks to enjoin provisions of the Zuffa contracts at issue in *Le* and based on the same conduct alleged in *Le*—all of which was released by the class settlement in *Le*.  The settlement agreement in *Le* therefore bars Davis from asserting the same claims here.  *Second*, Davis lacks both Article III and antitrust standing to bring this case.  Davis fails to satisfy the requirements of Article III standing because he has not pled an injury in fact that (i) is fairly traceable to Defendants' challenged conduct, and (ii) would be redressed by a judicial decision in his favor.  Moreover, neither Davis nor the purported class of fighters he seeks to represent directly participate in the allegedly restrained market, and his asserted injury is—at most—derivative of

---

[1] *Le v. Zuffa, LLC*, No. 2:15-cv-01045 (D. Nev.) ("*Le*"); *Johnson v. Zuffa, LLC*, No. 2:21-cv-01189 (D. Nev) ("*Johnson*"); *Cirkunovs v. Zuffa, LLC*, No. 2:25-cv-00914 (D. Nev.) ("*Cirkunovs*").  Like *Le* and *Johnson*, even taken at face value, Davis's allegations do not establish the required elements of a Sherman Act § 2 claim, failing to plead facts sufficient to show any genuine exclusionary conduct, a properly defined relevant market, or any actionable wrongdoing by Zuffa or its parent entities.

alleged harm to non-UFC promoters.  This defect, alone, requires dismissal under binding Ninth Circuit precedent.

No amendment could cure these defects.  The Court should dismiss the Complaint with prejudice.

## I.    RELEVANT BACKGROUND

The allegations in the *Davis* complaint substantially mirror those made against UFC a decade earlier in *Le*, four years earlier in *Johnson*, and just months ago in *Cirkunovs*.  *Le, Johnson*, and *Cirkunovs* are Section 2 monopsonization class action lawsuits by MMA fighters based on the same core allegations *Davis* advances here—alleged anticompetitive conduct constituting "a lengthy, illegal, and ongoing Scheme to eliminate competition from would-be rival MMA Promoters."  *Davis*, Compl. ¶ 1.[2]

### A.    The *Le* Litigation

In 2014, Cung Le and a group of UFC fighters filed a putative antitrust class action against Zuffa under Section 2 of the Sherman Act alleging that UFC had "(a) monopoly power in the market for promotion of live Elite Professional Mixed Martial Arts [MMA] Fighter bouts, and (b) monopsony power in the market for live Elite Professional MMA Fighter services."  *Le*, Am. Compl. ¶ 1 (Dec. 18, 2015), ECF No. 208.  The *Le* Plaintiffs brought the action on behalf of a "Bout Class" of fighters "who competed in one or more live professional UFC-promoted MMA bouts taking place or broadcast in" the U.S. through June 30, 2017.  *Le*, Settlement Agreement at 5 (Oct. 7, 2024), ECF No. 1045-2.

The *Le* Plaintiffs alleged that Zuffa maintained this market power by operating an "overarching anticompetitive scheme" through the following conduct:  (1) acquiring or eliminating actual or potential rival MMA promoters, *Le*, Am. Compl. ¶¶ 1, 4, 128–29; (2) imposing supposedly exclusionary and anticompetitive contractual provisions on UFC fighters, *id*. ¶¶ 109–13 and (3) using coercive tactics to prevent fighters from competing for other MMA promotions or against fighters under contract with other MMA promotions, *id*. ¶¶ 116–17.  The *Le* Plaintiffs

---

[2] Unless noted, all quoted material has been cleaned up for readability by removing brackets, ellipses, footnote call numbers, internal quotation marks, and internal citations, and all emphases are added.

Defs.' Mot. to Dismiss
Case No. 2:25-cv-00946-RFB-BNW

1  alleged that UFC's conduct:  (1) foreclosed rival MMA promotions from key inputs, such as

2  fighters, venues, and sponsors, *id*. ¶¶ 10–11, 124; (2) relegated rival promotions to "minor league"

3  status, *id*. ¶¶ 135–37; and (3) suppressed fighter compensation and the ability of MMA fighters to

4  move between promotions, *id*. ¶¶ 93–94.

5       To remedy the supposed harm caused by UFC's "scheme" to violate Section 2 of the

6  Sherman Act, the *Le* Complaint sought treble damages and injunctive relief on behalf of fighters

7  who competed in a UFC bout from December 16, 2010 to June 30, 2017.  *Id*. ¶¶ 44, 169.

8       **B.    The *Johnson* Litigation**

9       In June 2021, while awaiting the Court's class certification decision in *Le*, Plaintiffs'

10 counsel filed a second putative class action on behalf of MMA athletes against UFC.  *Johnson v.*

11 *Zuffa, LLC*, No. 2:21-cv-01189 (D. Nev. June 23, 2021), ECF. No. 1.  The *Johnson* Plaintiffs

12 acknowledged that their allegations were "virtually identical" to the conduct challenged in *Le*,

13 *Johnson*, Pls.' Notice of Related Cases at 2 (July 2, 2021), ECF No. 9, and that the "same Scheme

14 is the basis both for *Le* and the new *Johnson* complaint," *Johnson* Opp'n to Mot. to Dismiss at 1

15 (Oct. 22, 2021), ECF No. 41.  The only material differences between *Le* and *Johnson* were that the

16 *Johnson* action (i) added UFC's new corporate parents (first Endeavor, and later, TKO) as

17 defendants, and (ii) extended the end of the *Le* class period from June 30, 2017, to "the present."

18 In all other relevant respects, the *Johnson* allegations are identical to those that formed the factual

19 predicate for *Le*.  Ultimately, Plaintiffs' counsel in *Le* "elected to defer all injunctive relief

20 proceedings to the *Johnson* Action, and not seek injunctive relief in the *Le* Action."  *Le*, Joint Decl.

21 in Supp. of Pls.' Mot. for Prelim. Approval of the Settlement ¶ 191 (May 21, 2024), ECF No.

22 1024-2 (citing ECF No. 947).

23      **C.    The *Le* Settlement Agreement**

24      The parties entered into a settlement agreement to resolve *Le*, which Plaintiffs submitted

25 for the Court's preliminary approval on October 7, 2024.  *Le*, Settlement Agreement, ECF No.

26 1045-4.  On January 30, 2025, the *Le* Plaintiffs submitted a Motion for Final Approval of the

27 Settlement, noting that "not a single [*Le*] Class Member timely objected to any aspect of the

28

Settlement, the Plan of Allocation, or the fee and expense request of Class Counsel," and "not a single member of the Class opted out." *Le*, Mem. in Supp. of Mot. at 10, 28, ECF No. 1060-1.

On March 3, 2025, the Court granted final approval of the *Le* settlement under Rule 23(e). *Le*, ECF No. 1064. The Court's Order held that "Defendant and ***all members of the Class*** are bound by this Final Judgment and Order and by the Settlement" and dismissed "all Released Claims" by "Plaintiffs, members of the Settlement Class or other Releasor with prejudice." *Id.* at 9.

The *Le* Plaintiffs agreed to release past, present, and future claims against "Defendant Zuffa, LLC, and any and all of its past, present and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including TKO Operating Company, LLC and Endeavor Group Holdings, Inc." *Le*, Settlement Agreement at 2, ECF No. 1045-4. The scope of the Released Claims is as follows:

> ***[A]ny and all known and unknown claims, causes of action***, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights or recovery, or liabilities for any obligations of any kind whatsoever (however denominated), ***whether class or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature*** [. . .] known or unknown, suspected or unsuspected, asserted or unasserted, direct or derivative, based upon, arising from, or relating to: (i) ***the factual predicates of the Action, or any complaint or pleading therein***, from the beginning of time until final approval of this Settlement Agreement, including any contracts, mergers, acquisitions, transactions, ***or any business practices of any kind employed or executed by Defendant or its affiliates or assign***s; or (ii) any issue raised in the Action by pleading or motion.
>
> For clarity, Released Claims include, but are not limited to, claims that arise after the Execution Date to the extent they involve a continuation of some or all of the conduct or issues set forth in 10(a)(i) and (ii) herein.

*Id.* ¶ 10(a). The scope of the Released Claims was "intend[ed to] be interpreted and enforced broadly and to the fullest extent permitted by law." *Id.* ¶ 1(s).

### D. The *Cirkunovs* Litigation

On April 2, 2025, Defendants in the *Johnson* case moved to deny class certification or, alternatively, to strike the class allegations. *Johnson*, ECF No. 179. Defendants argued that the proposed class was legally deficient because a majority of its putative members had signed

4

Defs.' Mot. to Dismiss
Case No. 2:25-cv-00946-RFB-BNW

1    contracts containing arbitration and class action waiver provisions. *Id.* Following this motion, on

2    May 23, 2025, Plaintiffs' counsel filed a third putative class action against Defendants. *Cirkunovs*

3    *v. Zuffa LLC*, No. 2:25-cv-00914 (D. Nev. Mar. 23, 2025), ECF No. 1. The complaint states that

4    the case is "similar to" the *Johnson* and *Le* actions, *id.* ¶ 1, and, like them, alleges an "overarching

5    anticompetitive scheme" by Defendants to maintain monopoly and monopsony power in violation

6    of Section 2 of the Sherman Act. *Id.* ¶ 3. The main distinction in *Cirkunovs* is it is filed on behalf

7    of fighters who signed contracts containing arbitration clauses and/or class-action waivers,

8    excluding *Johnson* putative class members who did not sign such contracts. *Id.* ¶ 44.

9        **E.    The *Davis* Complaint**

10       On May 29, 2025, less than a week after filing *Cirkunovs* and less than three months

11   following the final approval of the *Le* settlement and as the *Johnson* litigation proceeded through

12   discovery, Plaintiff Davis filed this putative antitrust class action. *Davis*, Compl., ECF No. 1.

13   Davis is an active professional MMA fighter who fought for UFC during the *Le* class period, *id.*

14   ¶ 11, and has since continued his career by moving from UFC to fight for rival MMA promoter

15   Bellator from 2015 to 2023, and the Professional Fighters' League ("PFL") from 2023 through the

16   present. *Id.* Davis seeks only injunctive relief, not damages. *Id.* ¶¶ 181–83.

17       The Complaint incorporates the factual predicates of the *Le* and *Johnson* actions, stating:

18   "As detailed in two class actions brought by UFC Fighters, the UFC acquired and maintained its

19   dominant market position not through competition on the merits, but through a lengthy, illegal,

20   and ongoing Scheme to eliminate competition from would-be rival MMA Promoters." *Id.* ¶ 1

21   (citing *Le* and *Johnson*). Like *Le* and *Johnson*, Davis alleges that UFC, by and through the same

22   corporate entities, violated Section 2 of the Sherman Act "through the continuing anticompetitive

23   Scheme" originally alleged in *Le. Id.* at 1.

24   The following allegations of anticompetitive conduct in *Davis* are identical and/or are

25   continuations of the same course of conduct alleged in the *Le* action:

26

27

28

5

Defs.' Mot. to Dismiss
Case No. 2:25-cv-00946-RFB-BNW

| Allegation | *Le* | *Davis* |
|---|---|---|
| UFC acquired rival promotions | ¶¶ 4, 128–29 | ¶¶ 3, 136–40 |
| Restrictive contractual provisions | ¶¶ 109–13 | ¶¶ 117–25, 178 |
| Use of threats, intimidation, and retaliation against UFC fighters to prevent them from competing for other MMA promotions or against MMA fighters competing for other MMA promotions | ¶¶ 116–17 | ¶¶ 124–25 |
| Foreclosure of rival promoters from key inputs (fighters, venues, sponsors) | ¶¶ 10–11, 124 | ¶¶ 3–4, 104–05, 155–57 |
| Relegation of rival promotions to "minor League" status | ¶¶ 135–37 | ¶¶ 142–45 |
| Suppression of fighter compensation and career mobility | ¶¶ 6, 93–94 | ¶¶ 4, 15, 168–70 |
| UFC control over input and output markets in the U.S. and North America | ¶¶ 1, 67–70 | ¶¶ 8, 67–72, 99–101 |

The only material difference[3] between the *Davis* Complaint and the *Le, Johnson,* and *Cirkunovs* complaints is that Davis, although himself a former UFC fighter and *Le* class member, purports to bring the instant suit "on behalf of himself and a proposed class of Professional MMA Fighters at non-UFC MMA Promotions" who have fought "from May 29, 2021 until the scheme alleged herein ceases." *Davis*, Compl. ¶¶ 11, 46. Davis alleges his "claims are typical of those of the class he seeks to represent" because he "was injured by the UFC's illegally obtained monopsony power that resulted in artificially suppressed compensation for competing in Professional MMA Bouts in the Relevant Input Market." *Id.* ¶ 49.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), "[d]ismissal is proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th

---

[3] Davis's Complaint also introduces references to the Muhammad Ali Boxing Reform Act, 15 U.S.C. §§ 6301 *et seq.* ("Ali Act"), not as a direct legal basis for his claims or as a separate cause of action, but in an attempt to bolster his antitrust claims by analogizing how UFC's alleged conduct might violate other laws applicable to a different professional sport (boxing). *E.g.*, *Davis*, Compl. ¶¶ 5–8. Such references are entirely irrelevant to the plausibility of Plaintiff's allegations against Defendants, as the Ali Act is not an antitrust law and does not apply to MMA. 15 U.S.C. § 6301(8) (defining scope of Ali Act's restrictions as applying to "professional boxing matches"– that is, "a ***boxing*** contest held in the United States between individuals for financial compensation").

Defs.' Mot. to Dismiss
Case No. 2:25-cv-00946-RFB-BNW

1  Cir. 2013).  To defeat dismissal, the complaint "must contain sufficient factual matter" to "state a

2  claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3  <u>**ARGUMENT**</u>

4  **I.     PLAINTIFF'S CLAIMS ARE BARRED BY THE *LE* SETTLEMENT RELEASE.**

5          A plaintiff's claim is barred as a matter of law if they have previously executed a valid

6  release of the claims now asserted.  *E.g.*, *Lahren v. Univ. & Cmty. Coll. Sys. of Nev.*, No. 3:03-cv-

7  00631, 2005 WL 8161793, at *6 (D. Nev. Dec. 27, 2005) (dismissing claim on grounds that if a

8  settlement "release is valid, Plaintiff's claims as to" conduct within the scope of the release "would

9  be barred as waived under the release").  A release is a contract, and when its language is clear and

10  unambiguous, it must be enforced according to its terms.  *Marder v. Lopez*, 450 F.3d 445, 453 (9th

11  Cir. 2006) (dismissing plaintiff's claim on 12(b)(6) grounds where plaintiff's "proposed

12  interpretation of the Release is inconsistent with its terms because the Release's language broadly

13  encompasses" "each and every claim . . . heretofore or hereafter arising out of or in any way

14  connected with, either directly or indirectly" the challenged conduct).

15          Here, Plaintiff's claims are barred because (A) he is bound by a valid and enforceable

16  Settlement Agreement, (B) that Agreement contains a broad and unambiguous release of all claims

17  related to the underlying conduct, and (C) his current claims arise from the same factual predicate

18  and fall squarely within the scope of that release.  Accordingly, the Complaint must be dismissed

19  with prejudice.

20          **A.     Plaintiff Is Bound by the *Le* Settlement Agreement.**

21          The *Le* class consisted of persons who fought for UFC between December 16, 2010, and

22  June 30, 2017.  *Le*, Am. Compl. ¶ 1, ECF No. 208.  Plaintiff Davis and his counsel acknowledge

23  he fought for UFC during the *Le* class period, was a member of the *Le* class, and did not opt out.

24  *Davis*, Compl. ¶ 11, ECF No. 1; *Le*, Mem. in Supp. of Mot. for Final Approval of Settlement at

25  28, ECF No. 1060-1 (*Le* Plaintiffs' counsel informing the Court that "not a single Class Member

26  opted out" and "there were zero timely objections").  The Court granted final approval of the *Le*

27  settlement on February 28, 2025, ECF No. 1063, which "fully, finally, and forever" resolved and

28  released all three Defendants from the claims that Davis now attempts to relitigate here.  Davis

Defs.' Mot. to Dismiss
Case No. 2:25-cv-00946-RFB-BNW

does not allege that the *Le* Settlement Agreement was invalid or otherwise unenforceable. Therefore, the Agreement constitutes a valid and enforceable contract and Davis is bound by its terms, including the release provision.

**B.    The *Le* Settlement Contains a Broad Release of Claims.**

An express purpose of the *Le* Agreement was to extinguish any and all claims related to this matter, and the language of the release provision was drafted to achieve that end.    The provision is intentionally broad and leaves no doubt as to the scope of the claims being relinquished.    In relevant part, it released Defendants[4] from "any and all known and unknown claims. . . whether class or individual . . . for equitable or injunctive relief of any nature" including claims:

> *asserted or unasserted, direct or derivative, based upon, arising from, or relating to: (i) the factual predicates of the Action, or any complaint or pleading therein, from the beginning of time until final approval of this Settlement Agreement, including any contracts, mergers, acquisitions, transactions, or any business practices of any kind employed or executed by Defendant or its affiliates or assigns; or (ii) any issue raised in the Action by pleading or motion [including but not limited to] claims that arise after the Execution Date to the extent they involve a continuation of some or all of the conduct or issues set forth in 10(a)(i) and (ii) herein*.

*Le* Settlement Agreement ¶ 10, ECF No. 1045-4.[5]

The use of sweeping phrases such as "any and all known and unknown claims," "of any nature," "[involving] a continuation of some or all of the conduct" demonstrates a clear intent by the parties to extinguish all potential liability stemming from the conduct alleged in *Le*.    The scope

---

[4] In addition to Zuffa, the *Le* settlement released claims against "any and all of its past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including TKO Operating Company, LLC and Endeavor Group Holdings, Inc." *Le*, Settlement Agreement ¶ 1(q), ECF No. 1045-4.

[5] The exception to this provision is for "claims that any Class Member or Releasor has or may have that are being pursued by virtue of any Class Member or Releasor's inclusion as part of the *Johnson* Action," but Davis is not seeking to represent the *Johnson* class and in any event ceased fighting for the UFC in 2015 and therefore is not a member of the *Johnson* class.  *Compare Le*, Settlement Agreement ¶ 10(a), ECF No. 1045-4 (describing Davis's last fight under his UFC contract as occurring in 2014 or 2015, during the *Le* class period and pre-dating the *Johnson* class period), *and Le*, Class Cert. Order (Aug. 9, 2023), ECF No. 839 (defining the *Le* class as fighters who competed in a UFC bout from December 16, 2010 to June 30, 2017), and *Johnson*, Am. Compl. (Dec. 15, 2023), ECF No. 118 (defining the purported *Johnson* class as fighters who competed in a UFC bout from July 1, 2017 through the present).

Defs.' Mot. to Dismiss
Case No. 2:25-cv-00946-RFB-BNW

is not limited to the specific legal theories pleaded in the prior complaint; it is also intentionally forward-looking, extending to any "claims that arise after the Execution Date to the extent they involve a continuation of some" of the conduct forming the factual predicates of *Le*. *Le* Settlement Agreement ¶ 10(a), ECF No. 1045-4. This provision must be enforced as written.

**C.    Plaintiff's Claims Fall Within the Scope of the *Le* Settlement Release.**

The claims Plaintiff attempts to assert in the present lawsuit are the claims he unambiguously agreed to relinquish in the *Le* settlement. A comparison of the allegations in the current Complaint to the conduct described in *Le* reveals that they arise from the identical factual predicates, a point Davis concedes by acknowledging they are a continuation of the previously litigated issues in *Le*. *Davis*, Compl. ¶ 1, ECF No. 1 ("As detailed in two class actions brought by UFC Fighters, the UFC acquired and maintained its dominant market position not through competition on the merits, but through a lengthy, illegal, and ongoing Scheme to eliminate competition from would-be rival MMA Promoters. *See Le v. Zuffa*, No. 2:15-cv-01045 (D. Nev.); *Johnson v. Zuffa*, 2:21-cv-01189 (D. Nev.)"). Mirroring the *Le* complaint almost verbatim, Davis alleges that UFC monopolized the promotion of elite professional MMA bouts and monopsonized the market for elite MMA fighters' services through the same supposed "unlawful scheme." *Id.* Davis further alleges the same relevant markets (input, output, and geographic), the same supposed "anticompetitive conduct," and the same supposed anticompetitive effects. *Compare Le*, Am. Compl. ¶ 7, ECF No. 208 ("As part of the anticompetitive scheme alleged herein, the UFC has acquired, driven out of business, foreclosed the entry of and/or substantially impaired the competitiveness of multiple actual and potential MMA Promotion rivals."), *with Davis*, Compl. ¶ 2, ECF No. 1 (verbatim description of UFC's alleged scheme). Because Plaintiff's current claims "relate to" the allegations of the *Le* Action, they fall squarely within the unambiguous scope of the release and are, therefore, barred. *See Adams v. Wells Fargo Bank, N.A.*, No. 4:13-cv-05164, 2015 WL 1434599, at *2 (N.D. Cal. Mar. 30, 2015) (prior settlement's broad release language precluded a subsequent lawsuit because it was designed to "prevent relitigation of settled questions at the core of a class action.").

9

Defs.' Mot. to Dismiss
Case No. 2:25-cv-00946-RFB-BNW

1    **II.     PLAINTIFF HAS ALSO FAILED TO PLEAD ARTICLE III STANDING.**

2        Plaintiff's case also cannot proceed in the absence of factual allegations demonstrating the

3    "irreducible constitutional minimum" of Article III standing:  1) an injury in fact, 2) that is fairly

4    traceable to Defendants' challenged conduct, and 3) that is likely to be redressed by a judicial

5    decision in Plaintiff's favor.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v.*

6    *Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  Where, as here, a Plaintiff seeks only injunctive

7    relief, he must show that he is under an "actual and imminent threat" of suffering a "concrete and

8    particularized" injury in fact.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

9    Hypothetical or conjectural harm does not suffice.  *Id.*; *see also Clapper v. Amnesty Int'l USA*, 568

10   U.S. 398, 410 (2013) ("threatened injury must be certainly impending").  Plaintiff fails to plead

11   adequately any of the three elements of Article III standing.[6]

12       As a former independent contractor, like a former employee, Plaintiff has no standing to

13   seek injunctive relief against the contracting practices of a party with which he no longer has a

14   relationship.  *Bayer v. Neiman Marcus Grp.*, *Inc.,* 861 F.3d 853, 865 (9th Cir. 2017); *see Dukes v.*

15   *Walmart Stores, Inc.*, 564 U.S. 338, 364–65 (2011) ("The Ninth Circuit recognized the necessity

16   for this when it concluded that those plaintiffs no longer employed by Wal-Mart lack standing to

17   seek injunctive or declaratory relief against its employment practices.  The Court of Appeals'

18   response to that difficulty, however, was not to eliminate all former employees from the certified

19   class, but to eliminate only those who had left the company's employ by the date the complaint

20   was filed.  That solution has no logical connection to the problem, since those who have left their

21   Wal-Mart jobs since the complaint was filed have no more need for prospective relief than those

22   who left beforehand.").

23       Plaintiff's claimed injuries are not redressable by the changes to UFC's contracts that he

24   seeks.  Plaintiff asks this Court to remove certain clauses and add other ones to each contract UFC

25   has with its professional MMA fighters—a contract which Plaintiff is not under currently and

26   which he does not plead he is likely to enter in the future.  *Davis*, Compl. ¶¶ 11, 183, ECF No. 1.

27   _____

28   [6] A named plaintiff's failure to establish standing requires dismissal of putative class claims as
     well.  *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 710 (9th Cir. 2020) (affirming dismissal of
     putative class action where named plaintiff failed to establish injury in fact).

1  Plaintiff speculates that these changes to UFC's contracts will somehow lead to him being able to

2  enter a higher paying contract with his current promoter, the PFL, and to "compete against top

3  Fighters and advance his career." *Id.* ¶¶ 11, 23.  But where "a favorable judicial decision would

4  not require the defendant to redress the plaintiff's claimed injury, the plaintiff cannot demonstrate

5  redressability…unless [he] adduces facts to show that the defendant or a third party are nonetheless

6  likely to provide redress as a result of the decision." *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir.

7  2018).  Plaintiff's requested changes to UFC's contracts will not (and cannot) require his league

8  to pay him more.  *Paulsen v. CNF Inc*., 559 F.3d 1061, 1073 (9th Cir. 2009) (redressability

9  requirement not satisfied where third party would have no obligation to pay plaintiffs more upon

10  favorable judicial decision).

11      For similar reasons, Plaintiff's purported injury flows through an attenuated chain of events

12  that are not fairly traceable to the Defendants.  Plaintiffs' theory of harm relies on speculation

13  about the supposed effects of UFC's contractual provisions on other fighters and his own promoter,

14  and on speculation about how those independent actors would behave differently if UFC's

15  contracts were changed.  These guesses about the actions of non-parties do not satisfy Article III's

16  traceability requirement.  *See Clapper*, 568 U.S. at 414 ("speculative chain of possibilities does

17  not establish that injury" is "fairly traceable" to defendant's conduct).

18      Plaintiff's indirect alleged future harm also takes two non-actionable forms:  1) "fewer

19  opportunities to compete against top Fighters"; and 2) "continued artificially suppressed pay" from

20  his non-defendant promoter.  *Davis*, Compl. ¶¶ 23, 169, ECF No. 1.  The fact that Plaintiff does

21  not have the ability to dictate who his fight opponents will be is not an injury (setting aside the fact

22  that the Complaint does not even allege when Plaintiff will be competing in the future).  As much

23  as Davis may want this litigation to force UFC to co-promote fights in which he participates,

24  Defendants have no duty to deal with Plaintiff or his promoter.  *FTC v. Qualcomm Inc*., 969 F.3d

25  974, 994 (9th Cir. 2020) (quoting *Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*,

26  540 U.S. 398, 408 (2004)) ("The Sherman Act does not restrict the long recognized right of a

27  [party] engaged in an entirely private business, freely to exercise his own independent discretion

28

1   as to parties with whom he will deal"), *aff'd sub nom. Key v. Qualcomm Inc.*, 129 F.4th 1129 (9th

2   Cir. 2025).

3          And the Complaint's repeated allegations regarding UFC's purported refusal to co-promote

4   provide no reason to believe that Defendants would suddenly start co-promoting Plaintiff's fights

5   with his promoter when no court order would require them to do so. *Davis*, Compl. ¶¶ 23, 100,

6   117, ECF No. 1; *see also Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1184 (9th Cir.

7   2016) ("Competitors are not required to engage in a lovefest . . . ."). Antitrust law imposes no

8   such duty to aid a competitor. As a general rule, a business is "free to choose the parties with

9   whom [it] will deal, as well as the prices, terms, and conditions of that dealing." *Pac. Bell Tel.*

10  *Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009); *see also United States v. Colgate &*

11  *Co.*, 250 U.S. 300, 307 (1919) (holding that the Sherman Act does not restrict a private business's

12  right to freely choose its customers and terms of dealing). This freedom from a duty to deal with

13  rivals has only one "limited exception," which the Supreme Court has placed "at or near the outer

14  boundary of [Section] 2 liability." *Verizon*, 540 U.S. at 409. This narrow exception applies only

15  when a monopolist unilaterally terminates a prior, profitable course of dealing for the sole

16  anticompetitive purpose of sacrificing short-term profits to exclude a competitor. *F.T.C.*, 969 F.3d

17  at 993 (citing the Supreme Court's decision in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,

18  472 U.S. 585 (1985)). That exception is facially inapplicable here, as Plaintiff does not allege the

19  termination of any prior profitable relationship but instead seeks to compel an entirely new one.

20         Accordingly, the Complaint should be dismissed for failure to establish any element of

21  Article III standing.

22  **III.    PLAINTIFF LACKS ANTITRUST STANDING TO PURSUE HIS CLAIMS.**

23         Antitrust standing is an indispensable requirement for an antitrust claim. *Associated Gen.*

24  *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 & n.31 (1983)

25  ("*AGC*"). It "is a threshold, pleading-stage inquiry," and a complaint that fails to allege standing

26  must be dismissed. *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 75–76 (2d Cir.

27  2013) (quoting *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) (en banc)). It is

28  therefore "mandatory" for Plaintiffs to plausibly allege that the harm they "suffered or might suffer

12

Defs.' Mot. to Dismiss
Case No. 2:25-cv-00946-RFB-BNW

1  from [Defendants' alleged] practice[s]" constitutes "an injury of the type the antitrust laws were

2  intended to prevent and that flows from that which makes defendants' acts [purportedly]

3  unlawful." *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 456 (9th Cir. 2021), *cert. denied*,

4  143 S. Ct. 84 (2022).  Plaintiffs must also demonstrate that they are "proper part[ies] to pursue the

5  claim" asserted.  *Id.* at 448.

6        The Supreme Court has identified several factors that courts should consider in determining

7  whether a plaintiff has antitrust standing:  (1) the causal connection between the violation and the

8  harm; (2) the presence of an improper motive; (3) the type of injury and whether it was one

9  Congress sought to address; (4) the directness of the injury; (5) the speculative nature of the

10  damages; and (6) the risk of duplicative recovery or complex damage apportionment.  *AGC*, 459

11  U.S. at 537–44.[7]

12      **A.**    **Plaintiff's Claim Asserts the Rejected Umbrella Theory of Standing.**

13        Plaintiff has no present direct relationship with the UFC.  His theory—that UFC's

14  contracting practices and alleged suppression of its fighters' pay lead rival promoters to suppress

15  their own fighters' pay—is a version of an "umbrella standing" claim in a monopsony market.  In

16  a market of sellers, the umbrella theory is a "consequential damages" theory that "seeks to hold

17  price-fixers liable for harm allegedly flowing from the illegal conduct even though the price-fixing

18  defendants received none of the illegal gains and were uninvolved in their competitors' pricing

19  decisions." *In re Coordinated Pretrial Procs. in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335,

20  1339 (9th Cir. 1982) ("*Petroleum Prods.*"); *see also Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-

21  cv-00230, 2014 WL 2610613, at *28 (D. Vt. June 11, 2014) (granting summary judgment against

22  an "umbrella theory" of damages because the causal connection to prices set by non-conspirators

23  is "attenuated" and calculating such damages is a "highly speculative endeavor").  Here, instead

24  of alleging that he bought from a non-defendant whose price was too high, Plaintiff is alleging that

25  he sold his labor to a non-defendant whose price was too low.  The missing logical links in the

---

[7] Because Plaintiff does not seek damages, we do not discuss the sixth factor, risk of duplicative recovery or complex damage apportionment.  *See City of Oakland*, 20 F.4th at 455 (identifying five factors for determining antitrust standing, including "the risk of duplicative recovery" and "the complexity in apportioning damages").

theory remain the same:  Plaintiff's purported injury "necessarily depends" on the independent actions of third parties—namely, his promoters, who may have chosen to pay him less than he believes he deserved for any number of reasons that have nothing to do with Defendants.

While the Ninth Circuit has not ruled on all possible theories of umbrella standing under *AGC*, it has rejected multi-tiered umbrella causation theories like the one Plaintiff presents here. *Petroleum Prods.*, 691 F.3d at 1339–40 ("the limitations recognized in *Illinois Brick* bar the umbrella claims" because of the "multi-tiered distribution" at issue).[8]  Courts within the Ninth Circuit have repeatedly rejected claims of harm premised on the pricing decisions of the third parties with whom plaintiffs had actually transacted.  *E.g.*, *Sabol v. PayPal Holdings, Inc.*, No. 4:23-cv-05100, 2024 WL 3924686, slip op. at *3–4 (N.D. Cal. Aug. 23, 2024) (dismissing challenge to PayPal's contract terms that limited price discounts on non-PayPal alternatives by purchasers from those alternatives because plaintiffs' theory "necessarily depends on the independent actions of millions of merchants choosing to provide discounts for customers that do not use PayPal"); *In re HIV Antitrust Litig.*, No. 3:19-cv-02573, 2022 WL 22609107, at *44 (N.D. Cal. Sept. 27, 2022) (noting *Petroleum Products* rejected umbrella theory for price-fixing cases); *In re Online DVD Rental Antitrust Litig.*, No. 4:09-md-02029, 2011 WL 1629663, at *7 (N.D. Cal. Apr. 29, 2011) (finding no antitrust standing for Blockbuster customers who alleged that "Netflix pricing, by virtue of Netflix's status as the dominant player in the online DVD rental market, constituted a 'maximum' ceiling that dictated Blockbuster's pricing"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827, 2012 WL 6708866, at *7 (N.D. Cal. Dec. 26, 2012) (noting plaintiffs' concession that *Petroleum Prods.* barred umbrella claims), *aff'd*, 637 F. App'x 981 (9th Cir. 2016); *Garabet v. Autonomous Techs. Corp.*, 116 F. Supp. 2d 1159, 1169 (C.D. Cal. 2000) (same "because Plaintiffs have sued sellers from whom they have never made purchases,

---

[8] In *Petroleum Products*, the Ninth Circuit left open the question "whether, in a situation involving a single level of distribution, a single class of direct purchasers from non-conspiring competitors of the defendants can assert claims for damages against price-fixing defendants under an umbrella theory."  691 F.3d at 1340.

1    [so] any injury they have suffered is only indirect, due to the necessary intervening actions taken

2    by [the selling company]").[9]

3          For example, under *AGC* factor (2), plaintiffs must establish a "chain of causation between

4    Defendants' purported anticompetitive behavior and Plaintiffs' injury." *Jones* v. *Micron Tech.*

5    *Inc.*, 400 F. Supp. 3d 897, 912 (N.D. Cal. 2019). For umbrella plaintiffs, the "causal connection

6    between the alleged injury and the conspiracy is attenuated by significant intervening causative

7    factors (*i.e.*, independent pricing decisions of non-conspiring retailers)[.]" *Gross v. New Balance*

8    *Athletic Shoe, Inc.*, 955 F. Supp. 242, 246–47 (S.D.N.Y. 1997); *see In re Am. Express Anti-Steering*

9    *Rules Antitrust Litig.*, 19 F.4th 127, 134–35 (2d Cir. 2021) (umbrella standing fails at the first

10   step); *Oliver v. Am. Express Co.*, No. 1:19-cv-00566, 2020 WL 2079510, at *9–10 (E.D.N.Y. Apr.

11   30, 2020); *In re Amazon.com, Inc. eBook Antitrust Litig.*, No. 1:21-cv-00351, 2022 WL 4581903

12   (S.D.N.Y. Aug. 3, 2022), *report and recommendation adopted*, 2022 WL 4586209, at *9

13   (S.D.N.Y. Sept. 29, 2022).

14          **B.    Plaintiff's Theory of Standing Fails Even with Umbrella Standing.**

15          Applying the first, fourth, and fifth *AGC* factors—causal connection, directness, and

16   speculation—confirms that Plaintiff lacks standing. Plaintiff alleges injury stemming from the

17   purported inability of non-UFC promotions to attract a "critical mass of top-level MMA Fighters,"

18   which, in turn, Plaintiff alleges suppresses the pay and career opportunities for fighters outside the

19   UFC. *Davis*, Compl. ¶ 1, ECF No. 1. The claimed causal chain is that: (1) top fighters sign

20   exclusive contracts with the UFC; (2) those contracts bar appearances for rival promoters; (3)

21   fighters comply with the restrictions; (4) rival promotions earn less because they cannot stage bouts

22   featuring UFC-contracted fighters (assuming that such fighters would choose to participate in

23

24   [9] In *Costco Wholesale Corp. v. AU Optronics Corp.*, No. 2:13-cv-01207, 2014 WL 4723880 (W.D.
     Wash. Sept. 23, 2014), the district court recognized that "most federal courts in recent years have
25   rejected" the umbrella theory but allowed such a theory to survive a motion to dismiss in that case
     only for harm emanating from purchases that had an ownership or control relationship with the
26   alleged conspirator. *Id*. at *4. Absent that ownership and control between alleged conspirators,
     the court rejected that umbrella standing could suffice. *Id*. at *3–4 (to plausibly plead umbrella
27   standing, plaintiffs must show "non-conspirators charged higher prices because of the conspiracy,
     not for independent reasons" and could not pursue relief for items "sold by non-conspiring 'minor
28   players' to entities who were neither conspirators nor in a control relationship with conspirators").

bouts with any rival promotion who wanted to promote them); and (5) rivals therefore pay their own fighters less than they otherwise would if they could make more money by promoting bouts with all professional MMA fighters who have contracts with UFC.  *Id.* ¶¶ 117–118, 121.  Five speculative links separate the alleged violation from the asserted harm.  Such an indirect and speculative theory of injury cannot supply Plaintiff with antitrust standing to pursue his Sherman Act claim.  *AGC*, 459 U.S. at 535–36; *City of Oakland*, 20 F.4th at 461 (affirming dismissal of Sherman Act claim for lack of antitrust standing); *Mirage Wine + Spirit's, Inc. v. Apple Inc.*, No. 3:23-cv-03942, 2025 WL 1896006, slip op. at *12 (S.D. Ill. July 9, 2025) (denying antitrust standing where the injury was premised on the "sheer possibility" that the defendant would have successfully built a competing payment network); *Bakay v. Apple Inc.*, No. 5:24-cv-00476, 2024 WL 3381034, slip op. at *7 (N.D. Cal. July 11, 2024) (denying antitrust standing where an attenuated causal chain "necessarily means that there are other more direct and immediate victims"), *appeal docketed*, No. 24-5314 (9th Cir. Aug. 30, 2024).

The Ninth Circuit's decision in *City of Oakland v. Oakland Raiders* is instructive.  There, the court rejected the City's claim that the NFL's restriction on the number of teams caused it to lose the Raiders, holding that the City's theory of harm was too indirect and speculative to support antitrust standing.  The court reasoned the injury was both indirect, because more direct victims existed—the "actual purchasers" of the franchises—and impermissibly speculative, because it required guessing what would have happened in a hypothetical market, creating "too many speculative links in the chain of causation."  *Id.* at 459–61.  Likewise, in *Mirage Wine + Spirit's, Inc. v. Apple Inc.*, the court dismissed an antitrust claim that depended on the "sheer possibility" that Apple would have successfully built a dominant payment network to compete with existing credit networks and successfully forced down interchange fees, portions of which are paid by the plaintiff merchants, market-wide.  2025 WL 1896006, at *12.  The court found the merchants' alleged overcharge injury "too indirect, remote, and speculative to support antitrust standing."  *Id.*  Plaintiff's theory here suffers the same flaws: any harm is derivative of injuries to rival MMA promoters and hinges on the assumption that—absent UFC contracts—those promoters would become profitable enough to increase Plaintiff's pay.  *Davis*, *Compl.* ¶ 117 ("UFC has impaired

1  the ability of rival or potential rival Professional MMA Promotions to reach efficient scale or to

2  be sufficiently profitable to compensate their Fighters competitively."). Such conjecture cannot

3  satisfy *AGC*.

4          Plaintiff pleads no facts establishing that the rate of pay he received or receives from his

5  non-defendant promoters Bellator or PFL is or was somehow set by Defendants' challenged

6  conduct. His indirect theory of harm cannot confer the requisite antitrust standing to sustain his

7  claims. The Complaint, therefore, should be dismissed.

8  **IV.      CONCLUSION**

9          Defendants respectfully request that the Court dismiss Plaintiff's Complaint with

10  prejudice.

17

Defs.' Mot. to Dismiss
Case No. 2:25-cv-00946-RFB-BNW

1    Dated: August 6, 2025                           Respectfully Submitted,

2

3                                                    /s/ *J. Colby Williams*
     CHRISTOPHER S. YATES (*Pro hac vice*)           J. COLBY WILLIAMS (No. 5549)
4    chris.yates@lw.com                              jcw@cwlawlv.com
     Telephone: +1.415.395.8157                      Telephone: +1.702.382.5222
5    AARON T. CHIU (*Pro hac vice*)                  DONALD J. CAMPBELL (No. 1216)
     aaron.chiu@lw.com                               djc@cwlawlv.com
6    Telephone: +1.415.646.7839                      Telephone: +1.702.382.5222
     LATHAM & WATKINS LLP                            CAMPBELL & WILLIAMS
7    505 Montgomery Street, Suite 2000               710 South 7th Street
     San Francisco, CA 94111                         Las Vegas, Nevada 89101
8    Tel: (415) 395-8095                             Tel: (702) 382-5222

9
     SEAN M. BERKOWITZ (*Pro hac vice*)              WILLIAM A. ISAACSON (*Pro hac vice*
10   sean.berkowitz@lw.com                           *forthcoming*)
     Telephone: +1.312.777.7016                      wisaacson@dirllp.com
11   LATHAM & WATKINS LLP                            Telephone: +1.202.240.2902
     330 North Wabash Ave, Suite 2800                JESSICA PHILLIPS (*Pro hac vice*
12   Chicago, IL 60611                               *forthcoming*)
                                                     jphillips@dirllp.com
13                                                   Telephone: +1.202.240.2907
     LAURA WASHINGTON (*Pro hac vice*)               AGBEKO PETTY (*Pro hac vice*
14   laura.washington@lw.com                         *forthcoming*)
     Telephone: +1.424.653.5578                      apetty@dirllp.com
15   LATHAM & WATKINS LLP                            Telephone: +1.202.240.2906
     10250 Constellation Blvd, Suite 1100            DUNN ISAACSON RHEE LLP
16   Los Angeles, CA 90067                           401 Ninth Street NW
17                                                   Washington, DC 20004
     DAVID L. JOHNSON (*Pro hac vice*)
18   david.johnson@lw.com
     Telephone: +1.202.637.1061
19   LATHAM & WATKINS LLP
     555 Eleventh Street NW, Suite 1000
20   Washington, D.C. 20004

21

22

23   *Attorneys for Defendants Zuffa, LLC, TKO Group Holdings, Inc., and Endeavor Group*
     *Holdings, Inc.*
24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2         The undersigned hereby certifies that the foregoing Defendants' Motion to Dismiss was

3  served on August 6, 2025 via the Court's CM/ECF electronic filing system addressed to all parties

4  on the e-service list.

5

6                                                  */s/ J. Colby Williams*                                   .
                                                   J. Colby Williams of
7                                                  CAMPBELL & WILLIAMS

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28